IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

DARBY SCARBERRY,             )      Case No. 3:15CV0500
                                       )
            Petitioner,        )
                                         )      JUDGE JAMES G. CARR
              v.                 )      Magistrate Judge George J. Limbert
                                         )
NEIL TURNER, Warden,        )
                                           )      **REPORT AND RECOMMENDATION**
            Respondent.       )      **OF MAGISTRATE JUDGE**

This matter is before the undersigned on a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed, *pro se*, by Petitioner Darby Scarberry ("Petitioner") on March 9, 2015. ECF Dkt. #1. Petitioner seeks relief from his parole revocation stemming from convictions for petty theft and prior convictions for burglary, rape, and robbery entered by the Allen County, Ohio, Court of Common Pleas *Id.* On December 14, 2015, Respondent, Neil Turner, Warden ("Respondent"), Warden of the North Central Correctional Complex in Marion, Ohio, filed a return of writ. ECF Dkt. #4. On January 8, 2016, Petitioner filed a traverse. ECF Dkt. #5.

For the following reasons, the undersigned RECOMMENDS that the Court DISMISS Petitioner's federal habeas corpus petition in its entirety with prejudice.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

     A.      **Factual History**

The Supreme Court of Ohio set forth the following facts of this case in state habeas proceedings. These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360–361 (6th Cir. 1998), *cert. denied*,

119 S. Ct. 2403 (1999).

> {¶ 3} On June 13, 1984, Scarberry was convicted of rape and sentenced to a term of 10 to 25 years. The rape in question occurred on December 18, 1983.

> {¶ 4} On December 1 and 2, 2009, Scarberry, while out of prison on parole, committed two theft offenses at the same gas station in Lima, Ohio.

> {¶ 5} On January 11, 2010, Parole Officer Philip Rader prepared a violation report recommending revocation of Scarberry's parole. According to Scarberry, the Rader report falsely accused him of raping a gas-station attendant at knifepoint during one of the December 2009 petty thefts.

> {¶ 6} On January 7, 2010, Scarberry pled guilty to two misdemeanor counts of petty theft for the 2009 offenses. On February 2, 2010, the [Ohio Adult Parole Authority ("OAPA")] found that Scarberry had violated the conditions of his parole. The report containing the OAPA's findings made no mention of a knife being used or a rape being committed during the December 2009 offenses.

> {¶ 7} Scarberry alleges that he first became aware of the Rader violation report on May 16, 2011. Scarberry filed an administrative grievance with the OAPA seeking to have his parole revocation readdressed, but an OAPA regional administrator rejected the complaint, in part on the grounds that the issues complained of were not grievable.

> {¶ 8} On January 25, 2013, upon completion of Scarberry's 36–month reincarceration, the OAPA conducted a parole hearing and denied Scarberry's request for early release.

*Scarberry v. Turner*, 139 Ohio St. 3d 111, 112, 9 N.E.3d 1022, 1023, 2014-Ohio-1587.

### B.    **Procedural History regarding Convictions and Sentences**

On February 8, 1983, the Allen County Court of Common Pleas sentenced Petitioner to a term of 3-15 years for a burglary conviction. ECF Dkt. #4-1 at 8. Records indicated that Petitioner was released on parole on October 5, 1983 although his maximum sentence expiration was January 1, 1998. *Id*. at 6. However, while on parole, Petitioner committed a new crime for which he was returned to prison. On June 19, 1984, the Allen County Court of Common Pleas sentenced Petitioner to a term of 10 to 25 years for rape with specifications with that sentence to

2

run consecutively to any parole violation sentence imposed.  ECF Dkt. #4-1 at 9.  Records indicate that this therefore made his total sentence 13-40 years of imprisonment with a maximum sentence expiration of June 23, 2022.  *Id*. at 6.  Records indicate that Petitioner was released on July 17, 2001.  *Id*.

While on parole, Petitioner again committed new offenses and on July 31, 2002, the Allen County Court of Common Pleas sentenced Petitioner to two, 2-year terms of imprisonment on two counts of robbery, said terms to be served consecutively to one another, with a period of post-release control to follow.  ECF Dkt. #4-1 at 6, 11-13.  Petitioner's parole was revoked again, his cases were aggregated, and his 2002 conviction term was to run consecutive to the remainder left on his burglary and rape sentences, with a remaining maximum sentence expiration of June 23, 2022.  ECF Dkt. #4 at 2; ECF Dkt. #4-1 at 6.

Petitioner was again released on parole on September 28, 2006, but returned to prison after committing a theft offense, for which he was ordered to serve ninety days in jail with time served.  ECF Dkt. #4 at 2; ECF Dkt. #4-1 at 12-13, 40.  The violation report indicated that Petitioner had some difficulty with alcohol and ingesting prescription medications that were not his and an allegation that he broke into his mother's house. No charges were filed and he was placed on GPS monitoring, but apparently he cut off his monitoring system and absconded in January 2007.  ECF Dkt. #4-1 at 41.  He was then arrested on the theft charge.  *Id*.

Petitioner was paroled again and committed two theft offenses on December 1 and 2, 2009, for which he was sentenced by the Allen County Court of Common Pleas on January 10, 2010, to two consecutive 180-day terms in the county jail.  ECF Dkt. #4-1 at 3.

Petitioner did not file an appeal of any of his convictions or sentences.

3

**C.**     **Procedural History regarding Parole Board**

On January 8, 2010, Petitioner was sent notice of his release violation hearing, which was scheduled for February 2, 2010.  ECF Dkt. #4-1 at 21.  On February 2, 2010, a hearing was held with Petitioner and counsel present and the Ohio Parole Board revoked Petitioner's parole.  ECF Dkt. #4-1 at 17. The Ohio Parole Board accepted the hearing officer's recommendation that Petitioner receive a 26-month prison sanction for a technical parole violation.  *Id*. at 75.

On October 11, 2011, Petitioner sent a letter to the Ohio Parole Board alleging that all of the evidence used in approving his sanction was not presented at his parole revocation hearing. ECF Dkt. #4-1 at 75.  Petitioner explained that he had just become aware of this lack of evidence on May 16, 2011 when he had received a copy of his parole officer's violation report as he had not been given this report before so that he could defend against its allegations.  *Id*. Petitioner indicated that he had filed a grievance contesting the facts in the violation report as he did not have a chance to defend or investigate these facts prior to the hearing and some of the things in the report never happened.  *Id*.  He explained that he had grieved the alleged inaccuracies in the report to his Unit Administrator as per the written Offender Grievance Procedure but he was told that he had filed an untimely grievance.  *Id.*  Petitioner indicated that he then filed an appeal of the response he received to the Regional Administrator as per policy but he had not received a response as required within the fifteen day response period.  *Id.* at 76.  Petitioner included all of the relevant attachments, including copies of his filed grievance and response, a copy of the violation report, and a copy of his appeal of the grievance.  *Id*. at 77-98.

On January 25, 2013, the Ohio Parole Board conducted a central office board review hearing and held that Petitioner was not suitable for release and had 24 months remaining until

4

his next hearing.  ECF Dkt. #4-1 at 102.  On June 7, 2013, Petitioner submitted a request that the Ohio Parole Board reconsider its decision and he indicated that two conduct reports from 2011 that were in the record were removed from his prison disciplinary record and he indicated that he was convicted of one and not two counts of rape, contrary to that which was reported.  *Id*. at 169. In denying reconsideration, the Ohio Parole Board denied his request for a new hearing, indicating that upon reviewing the case, its decision was not based upon the number of counts of rape, but on Petitioner's repeated failures on community supervision.  *Id.* at 168.

On November 26, 2014, the Ohio Parole Board held another release hearing and found that Petitioner was not suitable for release.  ECF Dkt. #4-1 at 178.  The Ohio Parole Board found that Petitioner was a high risk to engage in further criminal conduct or that he would not conform to conditions of release and he would create undue risk to public safety due to the serious nature of the crime.  *Id*.  He was continued for another 24 months, with his next hearing scheduled for November 1, 2016.  *Id*.

### D. State Actions Challenging Parole

On April 16, 2013 between parole board hearings, Petitioner filed a *pro se* petition for a writ of habeas corpus in the Third District Court of Appeals.  ECF Dkt. #4-1 at 200-08.  His single ground for relief asserted:

> Where a prisoner has a protected liberty interest in a parole release decision, and the board or governmental decision threatens his prospective freedom from confinement, due process requires that the decision be supported by some reliable evidence in the record in order to satisfy the minimum requirements of procedural due process to help prevent arbitrary deprivation.

*Id*. at 202.  Petitioner requested the appellate court issue a writ compelling the parole board to expunge a statement in Parole Officer Rader's 2010 violation report that Petitioner used a knife

5

in a robbery and raped the victim, which he alleged was false, and he requested that the appellate court order the parole board to conduct a new release hearing without reference to the inaccurate information.  *See id*. at 205, 207.

Respondent moved to dismiss the petition on May 22, 2013.  *Scarberry*, 139 Ohio St. 3d at 112, 9 N.E.2d at 1023.  Petitioner opposed that motion and moved for leave to amend his complaint to attach his commitment papers, which were omitted from the original petition.  *Id*.

On July 10, 2013, the Third District Court of Appeals granted Respondent's motion to dismiss on the grounds that the petition was procedurally defective, Petitioner had no constitutional right to early release, and the issue of early release on parole was an administrative, not judicial, matter.  ECF Dkt. #4-1 at 240-42.

Petitioner, *pro se*, filed a timely notice of appeal with the Ohio Supreme Court. *Scarberry*, 139 Ohio St. 3d at 113, 9 N.E.2d at 1023.  In his merit brief, Petition asserted the following proposition of law:

> Parole revocation implicates a liberty interest which cannot be denied without certain procedural due process protections.  Habeas [c]orpus will lie to challenge decisions of the adult parole revocation; and, a governmental or administrative decision that threatens a prisoners [*sic*] prospective release from confinement by extending the length of his imprisonment requires that the decision be supported by some evidence in the record from which the conclusion of the administrative tribunal was deduced in order to comport with minium requirements of procedural due process where an important liberty interest is being denied.[1]

On April 16, 2014, the Ohio Supreme Court affirmed the appellate court's judgment.  *Id*.  The Ohio Supreme Court ruled that a writ of habeas corpus was not the proper remedy to address

---

[1] Respondent did not include Petitioner's merit brief to the Ohio Supreme Court in his appendix to the return of writ.  The Court was able to access it, however, through the Ohio Supreme Court's online docket.

Petitioner's issue as the remedy requested by Petitioner for a due process violation is a new hearing and not release from prison, which is the purpose of filing a habeas corpus action.  *Id.*  The Supreme Court of Ohio also ruled that Petitioner was not entitled to a new early-release hearing because there is no legal basis for the court to order a new hearing to consider early release as the decision to grant or deny early release is wholly discretionary. *Id.*  Finally, the Ohio Supreme Court held that the violation report that Petitioner complained of did not accuse Petitioner of committing rape in 2009 as he alleged.  *Id.*

## II.      FEDERAL HABEAS CORPUS PETITION

Petitioner, *pro se*, filed the instant § 2254 federal habeas corpus petition on March 9, 2015.  ECF Dkt. #1.  He asserts the following sole ground for relief:

> Fourteenth Amendment [d]ue [p]rocess violation of the minimum requirements at a [p]arole [r]evocation [h]earing to wit: (a) written notice of the claimed violations of parole; (b) disclosure of the evidence used against him; (c) opportunity to present witnesses [*sic*] and documentary evidence; (d) the right to confront and cross examine any adverse witnesses; and (f) a written statement by the fact-finders as to the evidence relied on as the reason for revoking his parole.

*Id*. at 5.

Respondent filed an answer/return of writ on December 14, 2015.  ECF Dkt. #4.  Petitioner filed a traverse on January 8, 2016.  ECF Dkt. #5.

## III.     PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a writ of federal habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S.

7

725, 731 (1993).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgment became final.  28 U.S.C. § 2244(d)(1).  Respondent does not challenge the timeliness of Petitioner's habeas petition.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated. *McMeans*, 228 F.3d at 681 (citing *Petrucelli v. Coombe*, 735 F.2d 684, 688–89 (2nd Cir. 1984)).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims.  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  A petitioner fairly presents the substance of his federal constitutional claim to the state courts by:  (1) relying upon federal cases that use a constitutional analysis; (2) relying

upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of

constitutional law or in terms sufficiently particular to allege the denial of a specific

constitutional right; or (4) alleging facts that are obviously within the mainstream of

constitutional law.  *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004) (quoting *Newton v.*

*Million*, 349 F.3d 873, 877 (6th Cir. 2003)); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th

Cir. 1993), *cert. denied*, 509 U.S. 907 (1993).  In *Harris v. Lafler*, the Sixth Circuit laid out the

options that a district court may pursue in dealing with a petition that contains unexhausted

claims:

> When faced with this predicament in the past, we have vacated the order granting
> the writ and remanded the case to the district court so that it could do one of four
> things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125
> S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner
> returns to state court to raise his unexhausted claims, *id.* at 275, 125 S.Ct. 1528;
> (3) permit the petitioner to dismiss the unexhausted claims and proceed with the
> exhausted claims, *id.* at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion
> requirement altogether and deny the petition on the merits if none of the
> petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031–32 (6th Cir. 2009).  The Supreme Court has held that "the petitioner has

the burden ... of showing that other available remedies have been exhausted or that

circumstances of peculiar urgency exist."  *Darr v. Burford*, 339 U.S. 200, 218–19 (1950),

overruled in part on other grounds, *Fay v. Noia*, 372 U.S. 391 (1963).  A petitioner will not be

allowed to present claims never before presented in the state courts unless he can show cause to

excuse his failure to present the claims in the state courts and actual prejudice to his defense at

trial or on appeal, or that he is actually innocent of the crime for which he was convicted.

*Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.      <u>Procedural Default</u>

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman*, 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment."  *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 805 (1991)) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition.  *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there are no independent and adequate state grounds for a state court decision absent a clear statement to the contrary. *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit established a four-pronged analysis to determine whether a claim has been procedurally defaulted under *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule.  *Ford v. Georgia*, 498 U.S. 411, 423–24 (1991).  Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims.

10

*Coleman*, 501 U.S. at 729–30; *Richey v. Mitchell*, 395 F.3d 660 at 678 (2005) (holding that "a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (holding that if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (holding that even if the issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises).  Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision.  *Munson v. Kapture*, 384 F.3d at 313–14. Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman,* 501 U.S. at 751.  "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation.  *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985).  If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice.  *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

*Bonnell v. Mitchel*, 301 F. Supp. 2d 698, 722 (N.D. Ohio 2004).

11

IV.    **STANDARD OF REVIEW**

If Petitioner's claims overcome the procedural barriers of time limitation, exhaustion, and procedural default, the AEDPA governs this Court's review of the instant case because Petitioner filed the instant § 2254 federal habeas corpus petition well after the AEDPA's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir.1997), *cert. denied*, 522 U.S. 1112 (1998).  Under § 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for the writ of habeas corpus. The AEDPA provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
>> (1) resulted in a decision that was *contrary to*, or involved *an unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

529 U.S. 362, 412–13 (2000).  Furthermore, the Supreme Court declared that "a federal habeas

12

court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell*, 271 F.3d 652, 655–56 (6th Cir. 2001).

The Sixth Circuit offers the following guidelines for applying the AEDPA limitations:

A.   Decisions of lower federal courts may not be considered.

B.   Only the holdings of the Supreme Court, rather than its dicta, may be considered.

C.   The state court decision may be overturned only if:

    1.   It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal]; or

    2.   the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent'; or

    3.   'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case'; or

    4.   the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'

D.   Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be

13

> objectively unreasonable. That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.' 'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'
>
> E.    Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey*, 271 F.3d at 655–56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Dutton*, 785 F.2d 131, 133 (6th Cir. 1986). The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e). The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine*, 986 F.2d at 1514. The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), cert. denied, 520 U.S. 1257 (1997). Furthermore, a reviewing federal court is not free to ignore the pronouncement of a state appellate court on matters of law. *See Central States, Southeast & Southwest Areas Pension Fund v. Howell*, 227 F.3d 672, 676, n.4 (6th Cir. 2000). Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

14

## V.     LAW AND ANALYSIS

In Petitioner's sole ground for relief, he argues that the OAPA violated his due process rights by considering false information in both revoking his parole in 2010 and in denying his request for early release in 2013.  *See, e.g.*, ECF Dkt. #1-2 at 5-7.  Specifically, he complains that the OAPA relied on the following statement contained in Parole Officer Rader's 2010 violation report, which he alleges is false:  "Due to the nature of the offender's underlying offense, in which he went into a gas station and robbed it at Knife[sic] point, and then proceeded to Rape[sic] the cashier, his parole was revoked."  *Id.* at 7 (quoting ECF Dkt. #4-1 at 221).

Respondent contends that Petitioner's claim is unexhausted because he did not pursue his claim through the proper remedy in Ohio, a declaratory judgment action.  ECF Dkt. #4 at 7-8. He acknowledges that under *O'Sullivan v. Boerckel*, 526 U.S. 838, 844 (1999), "state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." *Id.* at 8.  But he claims that a declaratory judgment is the "sole remedy" in Ohio to timely challenge the revocation of parole, and Ohio courts have granted declaratory judgment to inmates challenging the results of parole hearings.  *Id.* at 7-9 (citing *Helton v. Ohio Adult Parole Auth.*, No. 00AP-1108, 2001 WL 709946 (Ohio Ct. App. June 26, 2001); *Layne v. Ohio Adult Parole Auth.*, 97 Ohio St. 3d 456, 780 N.E.2d 548, 2002-Ohio-6719).

Petitioner responds that his claim is properly exhausted because he satisfied the *Boerckel* Court's dictate that federal habeas petitioners give state courts "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  ECF Dkt. #5 at 1-2 (citing *Boerckel*, 526 U.S. at 845).  A declaratory judgment

15

action, he argues, is not clearly required under Ohio law and would be an "extraordinary remed[y]" that is "alternative to the standard review process."  *Id*. at 2-3 (quoting *Boerckel*, 526 U.S. at 844).

### A.    Exhaustion and/or Procedural Default

The undersigned agrees – in part – with both Respondent and Petitioner.  In his "Memorandum of Law and Argument" submitted with his petition, Petitioner states in conclusion that he "asks the court to grant his petition for [h]abeas relief and order the Ohio Adult Parole Authority to conduct another revocation hearing based on verifiable evidence, and reinstate his parole."  ECF Dkt. #1-2 at 12.  But Petitioner did not fairly present this claim challenging the parole revocation in state court.  In the state appellate court, Petitioner challenged only the "parole release decision, and the board or governmental decision" that "threaten[ed] his prospective freedom from confinement . . . ."  ECF Dkt. #4-1 at 202.  In the Ohio Supreme Court, he broadened his claim to include the decision of the OAPA in revoking his parole.[2]  As that court acknowledged, "Scarberry's complaint concern[ed] two distinct actions by the OAPA. In February 2010, the board revoked his parole. And on January 25, 2013, the board denied him early release."  *Scarberry*, 139 Ohio St. 3d at 113, 9 N.E.3d at 1024.  But, it explained, "Scarberry is not asking the court to order a new *revocation* hearing.  Scarberry's prayer for relief asked the court 'to order an evidentiary hearing and then issue a writ of habeas corpus ordering the Defendants to * * * hold another Release Hearing before the Parole Board to determine his suitability for release.'"  *Id*.  The court noted that, in any event, "[a]ny request for a

_____

[2] As noted above, Respondent did not include Petitioner's merit brief to the Ohio Supreme Court in his return of writ's appendix.  But the Court was able to access it through the Ohio Supreme Court's online docket.

16

new revocation hearing would be moot.  The revocation order required Scarberry to serve 36 months before becoming eligible again for parole in January 2013.  Scarberry concedes that he has completed that 36–month term." *Id*. at 113 n.1, 9 N.E.3d at 1024 n.1.  Petitioner, therefore, raised this claim only to the Ohio Supreme Court, and did not fairly present it to "*each appropriate state court*" as required to properly exhaust a claim for federal habeas review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (emphasis added).

Petitioner's parole-revocation claim is not unexhausted, however, as Respondent argues. It is procedurally defaulted.  "Because the exhaustion requirement 'refers only to remedies still available at the time of the federal petition,' . . ., it is satisfied 'if it is clear that [the habeas petitioner's] claims are now procedurally barred under [state] law' . . . ." *Gray v. Netherland*, 518 U.S. 152, 161–62 (1996) (internal citations omitted)).  Here, Petitioner can no longer assert his parole-revocation claim.  As the Ohio Supreme Court found, Petitioner already has served the period of time covered by the revocation order and is no longer eligible for a new revocation hearing.[3]  The claim, therefore, is procedurally defaulted and moot.  *See* U.S. Const. art. III, § 2 (a federal court has jurisdiction only over actual "cases or controversies");  *Spencer v. Kemna*, 523 U.S. 1, 7 (1998) (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477-78 (1990)) ("This case-or-controversy requirement subsists through all stages

---

[3] As state courts are the final authority on state law, this Court must defer to, and is bound by, the state court's interpretation of Ohio law on this issue.  *See, e.g., Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.");  *Warner v. Zent*, 997 F.2d 116, 133 (6th Cir. 1993) (Absent a showing of "extreme circumstances where it appears that the [state court's] interpretation of [state law] is an obvious subterfuge to evade consideration of a federal issue," a federal habeas court is bound by the state court's determination of state law.) (quoting *Mullaney v. Wilbur*, 421 U.S. 684, 690–91 (1975)).

of federal judicial proceedings, trial and appellate. . . .  The parties must continue to have a 'personal stake in the outcome' of the lawsuit."); *Carras v. Williams*, 807 F.2d 1286, 1289 (6th Cir. 1986) (A case is moot and outside the court's jurisdiction if "events occur during the pendency of a litigation which render the court unable to grant the requested relief."); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (Mootness is a jurisdictional issue, which may be raised by a court *sua sponte*.).

Moreover, Petitioner does not offer any argument regarding either the cause for, or prejudice resulting from, his procedural default of the claim.  Nor does he contend that he is actually innocent in order to excuse his procedural default.

Petitioner did, however, assert his claim regarding his parole release request to both the state court of appeals and the Ohio Supreme Court.  The Ohio high court explained, as Respondent now argues, that habeas is not the proper remedy for that claim, stating:

> {¶ 13} [A] writ of habeas corpus is not the appropriate remedy to address Scarberry's complaint. The revocation of parole implicates constitutional liberty interests, such that the parolee is entitled to certain due-process protections, among them the right to a hearing. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). The remedy for an alleged Morrissey due-process violation is a new hearing, not immediate release from confinement. *State ex rel. Jackson v. McFaul*, 73 Ohio St.3d 185, 188, 652 N.E.2d 746 (1995).

> {¶ 14} Consistent with these cases, Scarberry makes clear that the relief he seeks is a new parole hearing, not immediate release from incarceration. However, habeas corpus lies only if the petitioner is entitled to immediate release from confinement. *Keith v. Bobby,* 117 Ohio St.3d 470, 2008-Ohio-1443, 884 N.E.2d 1067, ¶ 12; *Pewitt v. Lorain Corr. Inst.*, 64 Ohio St.3d 470, 472, 597 N.E.2d 92 Except in extreme circumstances involving unreasonable delay, which Scarberry has not alleged, habeas is the wrong remedy to challenge alleged due-process violations at a parole hearing.  *Jackson* at 188, 652 N.E.2d 746.

*Scarberry*, 139 Ohio St. 3d at 113, 9 N.E.2d at 1023-24.  The court then proceeded to address the

merits of Petitioner's parole release claim.  *Id*. at 113-15, 9 N.E.3d 1024-25.  The undersigned recommends that the Court find that Petitioner has therefore fairly presented this claim to Ohio courts, even if a more suitable remedy existed at the time, and the undersigned thus recommends that the Court agree with Petitioner that it is exhausted.

In sum, the undersigned recommends that the Court dismiss Petitioner's claim relating to his parole revocation because it is procedurally defaulted and moot.  The undersigned further recommends that the Court find that Petitioner's claim relating to the denial of his early release is exhausted and not otherwise procedurally barred from federal habeas review.  The undersigned therefore addresses that claim in the next section.

**B**.  **Cognizability of Petitioner's Claim Regarding Parole Release**

While the undersigned recommends that the Court find that Petitioner parole-release claim is exhausted and not otherwise procedurally defaulted, the undersigned recommends that the Court find that this claim is not cognizable on federal habeas review.

Petitioner is correct that in *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972), the Supreme Court set forth minimum due process requirements for the revocation of parole.  It is clear, however, that "[t]here is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."  *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 7 (1979).  Simply put, there is no federal constitutional right to parole.  *See, e.g., Kentucky Dep't. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Michael v. Ghee*, 498 F.3d 372, 377–78 (6th Cir. 2007); *Gavin v. Wells*, 914 F.2d 97, 98 (6th Cir. 1990).  "[A] mere unilateral hope or expectation of release on parole is not enough to constitute a protected liberty interest . . . ."  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth*.,

19

929 F.2d 233, 235 (1991) (citing *Greenholtz*, 442 U.S. at 7).

Even so, a convicted person may have a liberty interest in parole created by a state's laws, which is subject to constitutional protection. *Thompson*, 490 U.S. at 460 (citing *Hewitt v. Helms*, 459 U.S. 460, 466 (1983)). But a state does not have a constitutional duty to establish a parole system, and the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release. *Greenholtz*, 442 U.S. at 7, 11; *see also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987). A protected liberty interest exists only if state law *entitles* a prisoner to release on parole. *E.g., Inmates of Orient Corr. Inst.*, 929 F.2d at 235 (citing *Greenholtz*, 442 U.S. at 7). And the Sixth Circuit expressly has held that Ohio law does *not* entitle inmates to parole before the expiration of a valid sentence of imprisonment and, consequently, does *not* create a liberty interest in parole. *Id.* (citing *Jago v. Van Curen*, 454 U.S. 14 (1981) (holding that the OAPA's rescission of a decision to grant parole on or after a specified date did not constitute a deprivation of "liberty" within the meaning of the Due Process Clause)).

Indeed, the Ohio Supreme Court ruled in Petitioner's case that under Ohio law as well, Petitioner had not "established a right to a new early-release hearing." *Scarberry*, 139 Ohio St. 3d at 113, 9 N.E.2d at 1024. It explained,

> [T]here is no legal basis for this court to order a new hearing to consider early release. The decision to grant or deny early release is wholly discretionary, and a prisoner has no "expectancy of parole upon which [he] can base his due process claims." *State ex rel. Blake v. Shoemaker,* 4 Ohio St.3d 42, 43, 446 N.E.2d 169 (1983). Therefore, Scarberry cannot demonstrate a clear legal duty on the part of the OAPA to conduct a second hearing.

*Id.* at 113-14.

For these reasons, the undesigned recommends that the Court dismiss with prejudice

20

Petitioner's claim that the OAPA's denial of his request for early release violated his due process

rights because the claim is noncognizable on federal habeas review.[4]

**VI.**   **CONCLUSION AND RECOMMENDATION**

For the above reasons, the undersigned recommends that the Court dismiss Petitioner's

federal habeas corpus petition in its entirety with prejudice.

Date: September 29, 2016                         /s/George J. Limbert
                                        George J. Limbert
                                        United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of
Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to
file objections within the specified time WAIVES the right to appeal the Magistrate Judge's
recommendation. L.R. 72.3(b).

---

[4] Even if this claim were cognizable on habeas, it would fail.  The undersigned agrees
with the Ohio Supreme Court that the statement in the 2010 Rader violation report of which
Petitioner complains "[did] not accuse Scarberry of committing rape in 2009, and therefore he
cannot establish a due-process violation."  *Scarberry*, 139 F.2d at 114, 9 N.E.2d at 1024.
Although the sentence contains misstatements, read in context, it clearly referred to the 1983
rape, not the 2009 incident.